IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GONZALEZ, | No.  CIV.S-04-1521 DAD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for judgment on the pleadings and/or remand and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is reversed and this matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

On February 8, 2001, plaintiff Fernando Gonzalez applied for Disability Insurance Benefits and Supplemental Security Income

1

under Titles II and XVI of the Social Security Act (the "Act"), respectively. (Transcript (Tr.) at 74-76, 322-24.) The Commissioner denied plaintiff's applications initially and on reconsideration. (Tr. at 57-60, 62-65.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 13, 2002, at which time plaintiff was unrepresented. (Tr. at 327-32.) In a decision issued on January 2, 2003, the ALJ determined that plaintiff was not disabled. (Tr. at 38-49.) However, following its review of that decision, the Appeals Council remanded the case back to the ALJ for further action. (Tr. at 68-70.)

Another hearing was held before the ALJ on June 10, 2003, at which time plaintiff was represented by an attorney. (Tr. at 333-46.) In a decision issued on October 22, 2003, the ALJ again determined that plaintiff was not disabled. (Tr. at 12-28.) The ALJ entered the following findings in this regard:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in

2

       Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity to lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk approximately 6 hours in an 8-hour day, and sit approximately 6 hours in an 8-hour work day. He is limited to occasional climbing. Further the claimant is limited to unskilled work.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

10. The claimant is "unable to communicate in English" (20 CFR §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR §§ 404.1567 and 416.967).

13. Based on an exertional capacity for light work, and the claimant's age,

3

           education, and work experience, Medical-Vocational Rule 202.16, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

    14.    The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

    15.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 27-28.) The ALJ's decision became the final decision of the Administration when the Appeals Council declined review on June 3, 2004. (Tr. at 6-9.) Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on July 29, 2004.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993,

995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively

```
            presumed disabled.  If not, proceed to step four.

            Step four: Is the claimant capable of performing
            his past work?  If so, the claimant is not
            disabled.  If not, proceed to step five.

            Step five: Does the claimant have the residual
            functional capacity to perform any other work?
            If so, the claimant is not disabled.  If not, the
            claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff argues in his motion for judgment on the pleadings that the ALJ erred at step three of the sequential evaluation in determining that plaintiff's impairments did not meet or equal a listed impairment. Specifically, plaintiff asserts that the ALJ should have found plaintiff to equal 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C ("Listing 12.05C"), which concerns "mental retardation."

At step three of the sequential evaluation, if a claimant demonstrates that he suffers from a severe impairment that is either listed in Appendix 1 of the regulations or is equal to a listed impairment, then he will be found disabled without regard to his age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listing of impairments in Appendix 1 "describes, for each of the

6

major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant's impairment is not considered listed solely because he has the diagnosis of a listed impairment. Rather, the impairment "must also have the findings shown in the Listing of that impairment." 20 C.F.R. §§ 404.1525(d), 416.925(d). See also Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

An impairment that is not listed in Appendix 1 may be found "equivalent" to a listed impairment if the medical findings are "at least equal in severity and duration to the listed findings." 20 C.F.R. §§ 404.1526(a), 416.926(a). To determine equivalence, the Commissioner is to compare the "symptoms, signs, and laboratory findings" reflected in the medical evidence with the medical criteria for the listed impairment, or with the listed impairment that is most like the claimant's impairment. Id. Thus, to equal a listed impairment a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. Id. See also Tackett, 180 F.3d at 1099. If a claimant has more than one impairment, and none of them meets or equals a listed impairment, the Commissioner must review the symptoms, signs, and laboratory findings associated with the claimant's impairments to determine whether the combination of impairments is medically equal to any listed impairment. Marcia, 900 F.2d at 175-76; see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1526(a), 416.926(a); Social Security Ruling ("SSR") 83-19.

Here, plaintiff argues that his condition is medically equivalent to Listing 12.05C, which provides in relevant part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The court will first consider whether plaintiff's condition is equivalent to the second prong of Listing 12.05C requiring a "physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Plaintiff argues that his condition satisfies this requirement.  The court agrees.  The ALJ's finding that plaintiff suffers from residuals of a stroke and borderline intellectual functioning, both of which the ALJ characterized as "severe" impairments (Tr. at 17), is sufficient to satisfy this prong of the Listing.  See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (stating a severe impairment meets the second prong of Listing 12.05C).

On the other hand, the court is unpersuaded by plaintiff's argument that he has a valid verbal, performance, or full scale IQ

8

within the range required for a finding of mental retardation. First, the parties agree that the relevant testing of plaintiff's IQ revealed a performance IQ of 73. (Tr. at 316.) This does not fall within the "60 through 70" range required by Listing 12.05C. Second, plaintiff correctly points out that internal Social Security guidelines known as the Program Operations Manual System ("POMS") allow, under certain circumstances, for an ALJ to find an IQ up to 75 to be medically equivalent to an IQ of 70. However, the language of those guidelines clearly does not mandate such a finding by the ALJ.[1] If the guidelines contained such a requirement the limits included in the regulations would be rendered meaningless. Further, the only authority cited by plaintiff in support of his position that the guidelines should be applied in this fashion is an out-of-circuit decision which is not binding on this court. See <u>Shontos v. Barnhart</u>, 328 F.3d 418, 424-25 (8th Cir. 2003)(finding error where

---

[1] Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS DI § 24515.056D.1.c.

1 "ALJ disregarded the POMS guidelines" in reaching decision that a
2 claimant with a combination of impairments, including an IQ of 72,
3 did not medically equal the listed impairment).  The guidelines in
4 question may have some persuasive value.  See Evelyn v. Schweiker,
5 685 F.2d 351, 352 n.5 (9th Cir. 1982) (commenting that the guidelines
6 "are not of absolutely no effect or persuasive force.") Nonetheless,
7 those guidelines clearly do not have the force and effect of law.
8 Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003) (recognizing
9 rule that guidelines do not "impose[] judicially enforceable
10 duties"); Evelyn, 685 F.2d at 352.  For these reasons, the court
11 finds that the ALJ did not err in his determination that plaintiff's
12 performance IQ of 73 was not medically equivalent to an IQ of 60
13 through 70.

14        The court also must consider whether the record
15 "demonstrates or supports onset" of plaintiff's alleged impairment
16 "before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.
17 Although plaintiff bears the burden of proof at step three of the
18 sequential evaluation, he has not addressed this factor in his motion
19 for judgment on the pleadings.  Further, the court is unable on its
20 own to locate any meaningful evidence in the record demonstrating or
21 supporting a finding of the onset of plaintiff's alleged impairment
22 before age 22.  Plaintiff was born on July 23, 1963, (Tr. at 74, 322)
23 and was therefore 37 years old at the time he filed his applications
24 alleging a disability onset date of August 8, 2000.  Plaintiff was 40
25 years old at the time of the Commissioner's final decision.  All of
26 /////

the medical records in the administrative record are dated during the year 2000 or beyond -- well past plaintiff's 22nd birthday.

For all of these reasons, the court finds that substantial evidence supports the ALJ's determination at step three of the sequential evaluation. Plaintiff's argument to the contrary is rejected.

In addition to his argument regarding step three, plaintiff argues in his motion for judgment on the pleadings that the ALJ should have heard testimony from a vocational expert due to plaintiff's alleged nonexertional impairments. At the fifth and final step of the sequential evaluation process, the Commissioner can satisfy the burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by either (1) applying the Medical-Vocational Guidelines (the "grids") in appropriate circumstances or (2) taking the testimony of a vocational expert ("VE"). See Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988); Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)).

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). They may be utilized as long as they "accurately and completely describe the claimant's abilities and limitations." Burkhart, 856 F.2d at 1340 (citing Jones, 760 F.2d at 998). See also Reddick v.

Chater, 157 F.3d 715, 729 (9th Cir. 1998); 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(b).  However, when a claimant's nonexertional limitations are sufficiently severe to significantly limit the range of work permitted by exertional limitations, the grids are inapplicable.  See Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).

The court agrees with plaintiff that the ALJ erred in relying on the grids in this case.  The grid rule relied upon by the ALJ, Rule 202.16, directs a finding of "not disabled" for a "[y]ounger individual" who is "[i]lliterate or unable to communicate in English" with "[u]nskilled or none" work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.16.  However, Rule 202.16 does not take into account all of the nonexertional limitations assigned to plaintiff by both Rebecca Jordan, M.D., an examining neurologist, and Barry N. Finkel, Ph.D., an examining psychologist.  Notably, the ALJ gave significant weight to the opinions of these two doctors. (Tr. at 25.)  Dr. Jordan indicated that plaintiff is limited to occasional fingering (fine manipulation) with the right hand and occasional feeling (skin receptors) with the left hand.  (Tr. at 275.)  Dr. Jordan also indicated that plaintiff is limited in his ability to see, explaining that he has "decreased uncorrected visual acuity" although he is able to "move about without additional guidance."  (Id.)  Dr. Finkel assigned additional nonexertional limitations to plaintiff, explaining that plaintiff is limited to simple tasks and mildly to moderately impaired in terms of attention and concentration.  (Tr. at 317.)  Dr. Finkel found plaintiff

moderately to markedly impaired with respect to pace.  (<u>Id</u>.)  He opined that plaintiff was moderately impaired in terms of his ability to work over an eight-hour work day.  (<u>Id</u>.)  In light of all of these nonexertional limitations, the court concludes that Rule 202.16 does not accurately and completely describe plaintiff's abilities and limitations.  Remand is required so that a vocational expert can provide testimony at the fifth and final step of the sequential evaluation process where it must be determined whether plaintiff has the residual functional capacity to perform any other work.

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1.  Plaintiff's motion for judgment on the pleadings and/or remand is granted in part and denied in part;

2.  Defendant's cross-motion for summary judgment is granted in part and denied in part; and

3.  The decision of the Commissioner of Social Security is reversed, and this case is remanded for rehearing consistent with the analysis set forth herein.  <u>See</u> 42 U.S.C. § 405(g), Sentence Four.

DATED: August 16, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1/orders.socsec/gonzalez1521.order

13